UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Helder Pires Macedo

     v.
                                        Case No. 1:26-cv-36-JL-TSM
                                        Opinion No. 2026 DNH 059

David Wesling, et al.

**ORDER ON PETITIONER'S MOTION FOR IMMEDIATE RELEASE**

Before the court, in the context of an immigration-related habeas corpus proceeding during which this court previously ordered the Department of Justice to provide a Due-Process required hearing, is petitioner Helder Pires Macedo's motion for immediate release from his ongoing immigration detention after an Immigration Judge (IJ) denied him release under bond. Macedo's criminal history includes pending state charges of possession with intent to distribute marijuana. At a March 13, 2026 bond hearing, the Immigration Judge found, based on his criminal history and the pending charges, that he was a danger to the community and ordered his continued detention. Macedo now challenges the constitutional sufficiency of the bond hearing under the Due Process Clause of the 14th Amendment to the Constitution. The respondents argue that the IJ's determination was constitutionally sufficient, that this court lacks jurisdiction to review the IJ's order under 8 U.S.C. § 1226(e), and that the petitioner should be required to exhaust his administrative remedies by appealing the IJ's decision to the Board of Immigration Appeals (BIA).

Having reviewed the parties' briefing and held oral argument, the court finds that § 1226(e) does not preclude review of the IJ's decision for constitutional sufficiency, but

that the IJ did not violate Macedo's due process rights when she found by clear and convincing evidence that he was a danger to the community.  The petitioner initiated a BIA appeal, but the court nonetheless finds that he was not required to exhaust his administrative remedies before moving for release in this court.

## I.   Background

Macedo is a legal permanent resident with citizenship from Portugal and Cape Verde. He moved to the U.S. with his family at age 13 and has had legal permanent resident status since then.  He is engaged and has a U.S. citizen child.

In 2012 he was arrested and charged with misdemeanor possession with intent to distribute marijuana in Massachusetts state court. In 2013 he pled guilty to the facts but did not admit the crime itself.  The court entered a continuance without a finding.[1]

In early 2025 he flew to Cape Verde for a short trip.  When he arrived back in the U.S. in April 2025 the Department of Homeland Security (DHS) determined him inadmissible to the United States based on his 2013 plea, and placed him in removal proceedings and immigration custody.  An IJ then ordered him removed.

On September 24, 2025, the Boston Municipal Court vacated the petitioner's 2013 plea entered on the charge of possession with intent to distribute marijuana based on ineffective assistance of counsel in violation of his constitutional rights.  Macedo then moved to reopen his immigration proceedings.  As a result of the vacatur of his criminal

---

[1] Crim. Dkt. (doc. no. 20-2) at 53.

conviction, an IJ terminated the petitioner's removal proceedings on November 20, 2025.

DHS appealed the IJ's termination order to the BIA.  That appeal is still pending.

**First court-ordered bond hearing.**  Macedo filed a habeas petition with this

court in January 2026.  Based on the reasoning in *Fils-Aime v. FCI Berlin, Warden*, No.

1:25-CV-287-JL-TSM, 2025 WL 3063164 (D.N.H. Oct. 31, 2025), on February 5, this

court partially granted the petition and ordered limited relief in the form of a bond

hearing.[2]  This first bond hearing took place on February 10, 2026, and the IJ declined

jurisdiction on the basis that Macedo was held under 8 U.S.C. § 1226(c).  Macedo

disagreed and moved to enforce this court's February 5 order.  After holding oral

argument, this court ordered a second, constitutionally adequate bond hearing, to take

place regardless of whether the petitioner was held under § 1225 or § 1226(c).[3]

**Second court-ordered bond hearing.**  The second bond hearing took place on

March 13, 2026.  After argument from both sides, the IJ found clear and convincing

evidence that Macedo was a danger to the community and continued his detention.  The

petitioner filed a new motion with the court, requesting immediate release.[4]  The

respondents objected.[5]

## II.    Jurisdiction and administrative exhaustion

The court views the jurisdictional and exhaustion questions presented by this case

in much the same light as *Makuraza v. Wesling, et al.*, No. 1:26-CV-122-JL-AJ, 2026 WL

---

[2] Order (doc. no. 12).
[3] Order (doc. no. 19).
[4] Pet. Mot. Release (doc. no. 20).
[5] Resp'ts' Opp. (doc. no. 22).

1068066 (D.N.H. Apr. 20, 2026).  There, as here, the respondents conceded that this court

has jurisdiction to review the constitutional sufficiency of a bond hearing.[6] *Id*. at *2.

Macedo, like Makuraza, challenges whether the evidence before the IJ was sufficient, as

a matter of law, to support a finding by clear and convincing evidence that he was a

danger to the community, as required by *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st

Cir. 2021).  And Macedo, like Makuraza, is subject to the same BIA appeals process.

Thus, for the reasoning set forth in *Makuraza*, the court finds that it has jurisdiction to

review the constitutional adequacy of the bond hearing and that administrative exhaustion

is not required.  *See Makuraza*, 2026 WL 1068066 at *2.

### III.    Analysis

Although this court has authority to consider Macedo's claim, that authority is

"limited."  *Mayancela Mayancela v. FCI Berlin, Warden,* No. 25-CV-348-LM-TSM,

2025 WL 3215638 at *5 (D.N.H. Nov. 18, 2025) (McCafferty, J.) (citing *Diaz Ortiz v.

Smith*, 384 F. Supp. 3d 140, 143 (D. Mass. 2019) (Saris, C.J.)).  "To obtain habeas relief,

a petitioner must show that the IJ failed to place the burden of proof on the government to

show dangerousness by clear and convincing evidence by 'either point[ing] to the

language of the [IJ's] opinion or demonstrate[ing] that 'the evidence itself could not – as

a matter of law – have supported' the [IJ's] decision to deny bond.' "  *Id.*  "Clear and

convincing evidence means highly probable, or reasonably certain. It falls between

---

[6] Resp'ts' Opp. (doc. no. 22) at 2 (citing *Massingue v. Streeter*, No. 3:19-cv-30159-KAR, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020)).

preponderance of the evidence and proof beyond a reasonable doubt." *Diaz-Alarcon v. Flandez-Marcel*, 944 F.3d 303, 306 (1st Cir. 2019) (internal citations omitted).

Macedo challenges the evidence itself, arguing that it could not, as a matter of law, establish by a clear and convincing standard that he was a danger to the community.[7]

In denying bond, the IJ based her decision on the "totality of the circumstances," including the pending charges against Macedo.[8]  She found that the possession of marijuana with intent to distribute "showed disregard for the law."[9]  The evidence before her included Macedo's criminal docket, showing the charges and disposition of the charges, and the police report detailing his arrest.  Citing *Rosa v. Garland*, 114 F.4th 1, 17 (1st Cir. 2024) and *Kercheval v. United States*, 274 U.S. 220 (1927), Macedo makes two related arguments: that *Rosa* prohibits the IJ from relying exclusively on an "uncorroborated" police report in making the bond decision, and that *Kercheval* prohibits the IJ from relying on Macedo's vacated plea as corroboration of the underlying events. He also argues that the offense conduct is too temporally remote to support a finding of dangerousness to the community.

The IJ permissibly considered the police report. But on this record, and under the particular facts and circumstances present here, as explained infra, the vacated plea and purported accompanying statements do not constitute permissibly considered evidence of dangerousness.  Nevertheless, although a close call, the totality of the evidence before the

---

[7] Pet. Mot. Release (doc. no. 20) at 7.
[8] Mem. Decision (doc. no. 23-1) at 5.
[9] *Id.*

IJ could allow a reasonable jurist to find by clear and convincing evidence that Macedo was a danger to the community. *See Mayancela Mayancela*, 2025 WL 3215638, at *6 ("based on the totality of the evidence before the IJ, a reasonable jurist could have concluded by a preponderance of the evidence that Mayancela posed a flight risk.")

*Police report*. In *Rosa*, the First Circuit Court of Appeals held that, in the context of immigration hearings concerning adjustment of status, "when exercising its discretion, [IJs] may not give substantial weight to a police report in the absence of a conviction or corroborating evidence of the allegations contained in the report." 114 F.4th at 19. It also noted that "the fact of a prosecution does not itself constitute corroboration" where "the indictment was [not] based on anything other than the police report alone." *Id*. at 22. But it specifically left open the question of whether "corroboration could come from within the police report itself." *Id*.

Macedo points to *Maurice v. Bondi*, 154 F.4th 15 (1st Cir. 2025), which reiterates *Rosa*'s holding that a "police report, absent a conviction, must be corroborated before the agency may give the report substantial weight in denying adjustment of status as a matter of discretion."[10] After finding that the BIA failed to consider certain hearing testimony "for its corroborative nature," the court in *Maurice* remanded to the BIA "to consider whether the administrative record contains corroboration for the police reports relied on

---

[10] Pet. Suppl. Resp. (doc. no. 25) at 2 (citing *Maurice*, 154 F.4th at 22).

to deny Maurice relief." *Id.* at 22.[11]  The court did not, however, address the question left open in *Rosa* of whether police reports require *external* corroboration.

This court views corroboration of a police report—internal corroboration—to describe multiple sources of inculpatory information (for the purposes of this analysis, suggesting dangerousness) contained within the four corners of the report.  Here, the police report contains such internal corroboration.  It describes several surveillance officers witnessing Macedo handing a bag to another individual, who smelled the bag, then completed a hand-to-hand exchange with Macedo.  Two officers then approached Macedo and seized from him several plastic bags of marijuana and $892 in cash.  The report lists three officers as witnesses of the events.  The fact that the report describes a physical seizure of drugs and observations by several officers of the petitioner engaging in drug distribution serves (in the context of an IJ's bond determination) as corroborating evidence of the allegations in the report.  *Cf. Picado v. Hyde*, No. 26-CV-065-JJM-PAS, 2026 WL 352691 at *7 (D.R.I. Feb. 9, 2026) (finding a police report uncorroborated where only one officer witnessed the alleged criminal activity).

Without a definitive statement from the Court of Appeals that corroboration for police reports must come from external sources—in other words, corroboration of a

---

[11] *Maurice* appears to require the BIA to make a finding regarding corroboration for police reports, rather than a requirement that the record simply contain corroborating evidence.  *See Maurice*, 154 F.4th at 22 ("the BIA's actual discussion of Maurice's hearing testimony does not suggest that the BIA considered the testimony for its corroborative nature…On this record, we cannot conclude that the BIA considered whether the police reports were corroborated before giving those reports substantial weight in denying Maurice adjustment of status.").  Because *Maurice*, like *Rosa*, arose in the context of an adjustment of status decision rather than a bond hearing, this court will not read such a requirement into Immigration Court custody determinations.

police report from sources external to and independent of the report—and because the police report in this case contains multiple types and sources of evidence which serve to corroborate the allegations in the report, this court finds that the IJ permissibly relied on the police report.  The court further finds that the events documented in the police report, namely illegal drug distribution, permissibly support a finding of dangerousness by clear and convincing evidence within the *Hernandez-Lara* standard.

*Vacated plea*. In denying bond, the IJ emphasized that Macedo had admitted to the facts underlying his misdemeanor marijuana charge under oath.  Citing *Kercheval*, *Matter of Adamiak*, 23 I. & N. Dec. 878, 879-880 (BIA 2006) and *Matter of Pickering*, 23 I. & N. Dec. 621, 624 (BIA 2003), *rev'd on other grounds*, *Pickering v. Gonzales*, 465 F.3d 263 (6th Cir. 2006) Macedo argues that the vacatur of his plea on ineffective assistance of counsel grounds "vitiates the admission," and under the BIA's own precedents, it is improper for an IJ to rely on the conviction and underlying statements as evidence of the underlying conduct.[12]

While not applicable to Immigration Court proceedings, *see* Fed. R. Ev. 1101, the Federal Rules of Evidence prohibit the admission in a civil or criminal case of a nolo contendere plea or of statements made during a proceeding on a guilty plea that was later withdrawn.  Fed. R. Ev. 410.  The Advisory Committee Notes to the rule explain that "[w]ithdrawn pleas of guilty were held inadmissible in federal prosecutions in *Kercheval v. United States,* 274 U.S. 220 (1927).  The Court pointed out that to admit the withdrawn

---

[12] Pet. Mot. Release (doc. no. 20) at 10.

plea would effectively set at naught the allowance of withdrawal and place the accused in a dilemma utterly inconsistent with the decision to award him a trial." *Id.* Similarly, the BIA found in *Adamiak* and *Pickering* that when a conviction is vacated for procedural defects the agency "no longer consider[s] the conviction to be valid" for immigration purposes. *In Re Adamiak*, 23 I. & N. Dec. at 881; *In Re Pickering*, 23 I. & N. Dec. at 624. Although this authority does not bind an IJ's determinations in the context of a bond hearing, it suggests that vacated pleas and the statements made in the process of entering such pleas should not be treated as convictions or used against the defendants where, as here, the conviction was vacated for procedural defects.

Macedo did not plead guilty; instead the court entered a continuance without a finding, a Massachusetts court order that allows a defendant to avoid pleading guilty by "admitting to sufficient facts" to support a guilty finding.[13] As the petitioner's counsel discussed at oral argument, Massachusetts courts do not always require a defendant in these circumstances to swear to having committed particular facts, but sometimes allow defendants to admit that if the prosecution were to present the alleged facts at trial, the defendant could be found guilty. The record before the IJ contained no evidence of sworn statements by Macedo from his plea colloquy; there was and is no evidence that he made specific factual admissions, much less the substance of any such admissions. Without a conviction or a record of Macedo's statements, the probative value of his vacated plea is low. *See, e.g. Garces v. U.S. Atty. Gen.*, 611 F.3d 1337, 1348-49 (11th Cir.

---

[13] Crim. Dkt. (doc. no. 20-2) at 53.

2010) (in the context a removal proceeding, "[i]f the record established that [the petitioner] had indeed stood up in court and admitted the facts of the offense under oath, or that [state] procedural rules would necessarily have required him to do so…[that] would be strong evidence that he did in fact commit the crime," but in the absence of such circumstances "there was no substantial evidence that [the petitioner] admitted anything when he pled guilty."). Given its limited probative value, the court finds that the evidence before the IJ regarding Macedo's vacated plea could not have supported a finding of dangerousness under the circumstances present here.

   ***Timing of offense conduct***. The petitioner presents no binding authority for the proposition that offense conduct that took place 14 years ago cannot, as a matter of law, support a finding of current dangerousness. In making bond determinations, IJs must give 'reasoned consideration to the evidence as a whole, [make] supportable findings, and adequately explain[ ] [their] reasoning.'" *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023). The IJ explicitly stated that she considered the age of the offense conduct and the fact that the petitioner has not been charged with any crimes since then.[14] But she weighed the evidence against other evidence of his dangerousness (which she found to be clear and convincing), namely, the "strong disregard for the law" evinced by his drug dealing and the fact that he had not shown a strong history of other employment.[15]

   While the evidence relied on by the IJ here would not likely support a finding of dangerousness in a criminal detention proceeding, *see* 18 U.S.C. § 3142(g), the IJ made

---

[14] Bond Hr'g Tr. (doc. no. 21-1) at 18.
[15] *Id.*

her determination under a Congressionally-established scheme affording her far more discretion.  *See, e.g.* 8 C.F.R. § 1003.19(d) (permitting IJs to base their findings on "any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service.").  Although another court might have weighed the evidence available to the IJ differently, involvement in illegal drug dealing could support a finding that the petitioner was a danger to the community by clear and convincing evidence.

## IV.    Conclusion

Because the petitioner has not demonstrated that the IJ failed to apply the constitutional standard in her bond determination, the court denies the petitioner's motion for immediate release.[16]

SO ORDERED.

Joseph N. Laplante
United States District Judge

Dated: May 20, 2026
Cc: Counsel of record.

---

[16] Doc. no. 20.